IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

RUBY A. STEWARD                                                                                     PLAINTIFF

v.                                          NO. 3:05CV00114 HDY

JO ANNE B. BARNHART,                                                                           DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

The record reflects that in November of 2002, plaintiff Ruby A. Steward ("Steward") filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act ("Act"). Her application was denied initially and upon reconsideration. She next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). In January of 2005, the ALJ issued a ruling adverse to Steward. She then appealed that ruling to the Appeals Council. In May of 2005, the Appeals Council affirmed the ruling of the ALJ. That ruling therefore became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). In May of 2005, Steward commenced the proceeding at bar in which she challenged the final decision of the Commissioner.

The sole inquiry for the Court is whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012. The Court may not reverse the decision of the Commission merely because the evidence supports a different conclusion. See Id.

In determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole, it is helpful to identify those findings. The Commissioner made findings pursuant to the five step sequential evaluation process.[1] At step one, the Commissioner found that Steward "has not engaged in substantial gainful activity within the meaning of the ... Act since the onset date of disability on August 30, 2001." See Transcript at 13. At step two, the Commissioner found that Steward has a history of "diabetes mellitus, hypertension, gastroesophageal reflex disease, arm bursitis, mood disorder, possible borderline intellectual functioning, and possible personality disorder with dependent personally traits." See Transcript at 14. At step three, the Commissioner found that Steward has "a severe impairment or combination of impairments that are 'severe' within the meaning of the Regulations but

---

[1] The five steps involve determining the following: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work." See Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003) [citing Bowen v. Yuckert, 482 U.S. 137 (1987)].

not 'severe' enough to meet or medically equal, either singly or in combination to[,] one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." See Document 14. Given the foregoing findings at steps one through three of the sequential evaluation process, the Commissioner moved to step four where the following inquiry was made: "whether [Steward] retains the residual functional capacity to perform the requirements of her past relevant work ..." See Document 16. The Commissioner cited the Regulations for the following definition of the phrase "residual functional capacity:" "the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks ..." See Transcript at 16. With regard to Steward's residual functional capacity, the Commissioner found the following:

> ... [Steward] retains the residual functional capacity to perform light work except for work with interpersonal contact more than incidental to tasks performed, complexity of tasks is more than that learned and performed by rote with few variable and little judgment, and required supervision is simple, direct and concrete. ... [She] retains a capacity for the above describe range of light work that is unskilled. ...

See Transcript at 19-20. Thus, at step four, the Commissioner found that Steward's residual functional capacity was such that she could "return to her past relevant work as [a] welding machine feeder on an assembly line ..." See Transcript at 20. Given that finding, the Commissioner concluded that Steward was not disabled within the meaning of the Act.

Are the Commissioner's findings supported by substantial evidence on the record as a whole? Steward thinks not. She advances three reasons why the Commissioner's findings are not supported by substantial evidence on the record as a whole. Steward first maintains that the Commissioner "failed to consider [Steward's] non-exertional limitations and the effect they would have on [her] residual functional capacity." See Document 11 at 6.

A non-exertional limitation or impairment is one that affects a claimant's "ability to meet the demands of [a] job[] other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing, and pulling ..." See Burnside v. Apfel, 223 F.3d 840, 844 (8th Cir. 2000) [citing 20 C.F.R. 404.1569(a)]. 20 C.F.R. 404.1521 provides that an impairment is severe if it "significantly limits [the] claimant's physical or mental ability to do basic work activities." See also Hudson v. Bowen, 870 F.2d 1392 (8th Cir. 1989) (impairment severe if it has more than minimal effect on claimant's ability to work). The burden of proving the existence and severity of an impairment is upon the claimant. See Nguyen v. Chater, 75 F.3d 429 (8th Cir. 1995).

The Commissioner found that Steward had severe impairments, some of which can be characterized as non-exertional. The Commissioner concluded, however, that they did not meet or medically equal a listed impairment. The Commissioner specifically concluded as follows:

-4-

> In summary, whether considered individually or in combination, the claimant has not provided objective medical evidence of clinical and/or laboratory findings that meet the criteria of any listed impairment(s) found in Appendix 1. Hence, the claimant is not disabled within the meaning of the Social Security Act, based solely on the medical evidence. Consideration has been given to the claimant's medically determinable impairments under Section(s) 1, 4, 5, 9 and 12. The claimant does not have the specified clinical findings and diagnostic laboratory test results found in these listed impairments. Further, the claimant does not have medical evidence of the criteria required by other listed impairments in Appendix 1. Hence, the claimant does not have an objective medical condition of Listing severity. Further, there is no evidence that any medical source has stated an opinion that the claimant has a condition equivalent in severity to a listed impairment. …

See Transcript at 15-16.

Steward has identified a number of additional non-exertional impairments that the Commissioner allegedly did not consider. Steward has failed, however, to establish that the so identified impairments–considered both individually and collectively–are severe, i.e., they do not significantly limit her physical or mental ability to do basic work activities, nor have more than a minimal effect on her ability to work. It is true that several of the impairments were identified in the consultative evaluation conducted by Dr. Michael Langley ("Langley"); it does not follow, however, that the impairments are severe. Langley, in fact, specifically noted that Steward "has been able to work with [these impairments] for years" and, save her ability to lift, carry, or move objects, was not limited in her ability to work. Steward has therefore failed to carry her burden of proving that the additional non-exertional impairments are severe.

Steward alternatively maintains that the Commissioner "erred in discrediting [Steward's] complaints of pain and allegations of debilitating symptomology." See Document 11 at 6. Because her subjective complaints were discredited, she maintains that the Commissioner failed to properly consider "the effect [Steward's] limitations have on her ability to perform significant gainful employment." See Document 11 at 6.

"Pain is considered disabling when it is not 'remediable and precludes a claimant from engaging in any form of substantial gainful activity.'" See Johnston v. Shalala, 42 F.3d 448, 451 (8th Cir. 1994) [quoting Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989)]. The Commissioner is obligated to evaluate a claimant's pain, and subjective complaints, in light of the teachings of Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).[2]

The Commissioner thoroughly considered Steward's subjective complaints, including her complaints of pain. See Transcript at 16-19. The Commissioner concluded, however, that Steward's subjective complaints were not fully credible. The Commissioner specifically concluded as follows:

---

[2]

In Polaski v. Heckler, the United States Court of Appeals for the Eighth Circuit articulated the standard for evaluating subjective allegations and complaints of pain. The standard requires the Commissioner to give full consideration to all of the evidence presented relating to subjective allegations and complaints, including the claimant's prior work record, and observations by third parties, treating physicians, and examining physicians relating to such matters as the claimant's daily activities; the duration, frequency, and intensity of any pain; precipitation and aggravating factors; the dosage, effectiveness and side effects of any medication; and the claimant's functional restrictions. See also 20 C.F.R. 404.1529. "The [Commissioner] is permitted to discount such complaints if there are inconsistencies in the record as a whole, but the [Commissioner] must make express credibility findings and explain the record inconsistencies that support those findings." See Dolph v. Barnhart, 308 F.3d 876, 879 (8th Cir. 2002).

> In evaluating medical evidence and medical opinion evidence, the undersigned must assign the appropriate weight to evidence provided by the various medical sources. The undersigned finds that the record provides no treating or examining physician's opinion evidence that supports the credibility of the claimant's subjective complaints as disabling. The undersigned notes that no medical evidence indicates a professional opinion that claimant is unable to work based on either physical or mental condition.

See Transcript at 19.

With regard to Steward's subjective complaints, the Commissioner's findings and conclusion have support in the record. For instance, the Commissioner could properly find that the wide range of daily activities reported by Steward during her consultative evaluation were "inconsistent with [her] subjective allegations of disabling limitations" and, specifically, were "inconsistent with the much more restricted daily activities reported with her application for disability benefits only two months earlier and during the adjudication hearing." See Transcript at 17. The Commissioner could also properly find that Steward takes no prescription medication and only occasionally takes over-the-counter medication. In addition, the Commissioner could properly find that "the objective clinical and laboratory findings do not reveal medical evidence that supports the degree of subjective complaints reported by [Steward]." See Transcript at 18. Thus, the Court cannot say that the Commissioner failed to properly adjudge Steward's credibility with regard to her subjective complaints or, specifically, that her pain was disabling.

Steward advances a second reason why the Commissioner's findings are not supported by substantial evidence on the record as a whole. Steward maintains that the Commissioner improperly discredited Steward's statements concerning her impairments and their impact on her ability to work.[3] This reason appears, in large part, to center upon the following two assertions: (A) "the [Commissioner] erred by making his own estimate of [Steward's] IQ level, absent any support in the medical evidence," see Document 11 at 9; and (B) the Commissioner failed to consider the combined effects of Steward's impairments.

It is black letter law that in determining a claimant's residual functional capacity, the Commissioner must evaluate the claimant's credibility. See Pearsall v. Massanari, 274 F.3d 1211 (2001). In the event the Commissioner determines that a claimant's testimony as to her subjective complaints is not credible, the Commissioner must make specific findings explaining that conclusion. See Baker v. Secretary of Health and Human Services, 955 F.2d 552 (8th Cir. 1992).

The Commissioner acknowledged the possibility that Steward possessed "borderline intellectual functioning." See Transcript at 15. The Commissioner concluded, however, that the evidence did not support that possibility. The Commissioner specifically concluded as follows:

---

[3]

It appears that Steward's second reason is a re-casting of sorts of her first reason, i.e., the Commissioner failed to consider Steward's non-exertional limitations and erred in discrediting her complaints of pain and "allegations of debilitating symptomology." See Document 11 at 6.

> In regard to the need to rule out a possible borderline intellectual functioning, the claimant does not have a valid IQ score of 70 or lower as required by Listing 12.05C ... for consideration under the mental retardation listing. There is no medical evidence or other supportable sources that establish such an intellectual deficit to have been manifested initially prior to age 22. The first paragraph of Listing 12.05 requires significantly subaverage general intellectual functioning <u>with</u> deficits in adaptive functioning manifested during the developmental period (prior to age 22) or other evidence that support an onset of the impairment of mental retardation before age 22. Indeed, there is not even a diagnosis of borderline intellectual functioning, let alone mental retardation required by the Listed ... Finally, the claimant denied any special education class placement during her formal schooling and this does not indicate significant restrictions secondary to limited intellectual functioning ...

<u>See</u> Transcript at 15. [Emphasis in original].

Admittedly, there is evidence in the record that Steward functions at the lower end of the intellectual scale. Dr. George M. DeRoeck ("DeRoeck") conducted a psychological evaluation of Steward on March 13, 2003, and concluded the following with regard to what he described as her "cognition:" "Evidence of lower end of low average intellectual ability with evidence of limited educational background ..." <u>See</u> Transcript at 94. Notwithstanding DeRoeck's findings, though, the Commissioner could have found as she did.

The listing for mental retardation–Listing 12.05–requires evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," <u>i.e.</u>, the period prior to the claimant's twenty-second birthday. <u>See</u> <u>Clay v. Barnhart</u>, 417 F.3d 922, 928-929 (8th Cir. 2005)

[citing Listing 12.05]. "To show a sufficiently severe disorder under (C) of Listing 12.05, [a claimant] must show '[a] valid, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.'" See Id. at 929 [quoting Listing 12.05(C)].

There is little evidence of Steward's "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." She completed the ninth grade before dropping out of school. See Transcript at 151. She indicated on a disability report that she never attended special education classes during the years of her formal schooling. See Transcript at 63. There is nothing to suggest that what DeRoeck characterizes as Steward's "lower end of low average intellectual ability" manifested itself during her developmental period. There is also nothing to support Steward's assertion that the Commissioner made her own estimate of Steward's IQ. Rather, the Commissioner simply noted that Steward did not have a valid IQ score of 70 or lower. The Commissioner was correct in so noting; there is no evidence that Steward has a valid IQ score of 70 or less. It is also worth noting that there is little evidence to indicate deficits in Steward's adaptive functioning. For these reasons then, the Commissioner could have found as she did.[4]

---

[4]

Steward also faults the Commissioner for not fully developing the record with additional IQ testing. The Court cannot agree. Unlike the evidence offered by the claimant in Gasaway v. Apfel, 187 F.3d 840 (8th Cir. 1999), a case cited by Steward, there is little evidence in this proceeding to buttress Steward's assertion of borderline intellectual functioning and thus require additional IQ testing.

Steward alternatively maintains that the combined effects of her impairments were not considered by the Commissioner. With regard to that assertion, the relevant law is clear: the Commissioner is obligated to consider the combined effect of a claimant's impairments. See Hajek v. Shalala, 30 F.3d 89 (8th Cir. 1994). The Court finds that the Commissioner was fully aware of that obligation in this proceeding and, in fact, fulfilled the obligation.

First, the Commissioner noted that step two of the sequential evaluation process required a determination of whether Steward had a severe impairment. The Commissioner correctly noted that "[an] impairment or **combination of impairments** is 'severe' if it significantly limits an individual's physical or mental ability to do basic work activities." See Transcript at 13 [Emphasis added].

Second, the Commissioner correctly applied the foregoing principle. The Commissioner identified Steward's medically determinable impairments and found that she has "[an] impairment or **combination of impairments** that are 'severe' within the meaning of the Regulations ..." See Document 14 [Emphasis added].

Last, the Commissioner moved to step three of the sequential evaluation process and noted that the step required a determination of whether Steward's impairments met, or medically equaled, a listed impairment. The Commissioner found that whether considered individually or **"in combination**," Steward's impairments did not met, or medically equal, a listed impairment. See Transcript at 15 [Emphasis added].

-11-

On the basis of the foregoing, the Court finds that the Commissioner was fully aware of her obligation to consider the combined effect of Steward's impairments. The Court additionally finds that the Commissioner fulfilled that obligation by considering the combined effect of the impairments.

Steward last maintains that the Commissioner erred in concluding that Steward retains the residual functional capacity to perform her past relevant work. Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004) [citing 20 C.F.R. 404.1545(a)(1)]. The assessment is made using all of the relevant evidence in the record; it includes "the medical records, observations of the treating physicians and others, and [a person's] own description of his limitations." See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

The Commissioner found that Steward's residual functional capacity was such that she could perform light work that is unskilled, or more precisely, "light work except for work with interpersonal contact more than incidental to tasks performed, complexity of tasks is more than that learned and performed by rote with few variable and little judgment, and required supervision is simple, direct and concrete." See Transcript at 19. 20 C.F.R. 404.1567(b) provides that the demands of light work involve "lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds." That paragraph additionally provides the following:

> Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

See 20 C.F.R. 404.1567(b).

With regard to Steward's ability to perform light work, the evidence was in conflict. In a consultative evaluation, Langley found that Steward was limited in her ability to lift and carry. See Transcript at 102. Steward noted on a disability report, however, that her prior work as a welding machine feeder on an assembly line never required her to lift or carry weight in excess of ten pounds. See Transcript at 58. In fact, she noted that she was "not really" required to lift or carry. See Transcript at 58. She also noted on the disability report that she was required to sit and stand at the job for a total of four hours a day, see Transcript at 58, and she testified that she had difficulty sitting and standing, see Transcript at 159-160. Langley found, however, that Steward was not limited in her ability to sit or stand. See Transcript at 102. Steward testified that her hypertension and diabetes mellitus caused her hands and feet to become numb and sometimes caused "throbbing pains in the back of [her] neck …" See Transcript at 165-166. Although the physician's notes contained in the record are not a model of clarity, they appear to indicate that Steward's hypertension and diabetes mellitus were controlled with medication. See Transcript at 136-143.

Having considered the record as a whole, the Court finds that the Commissioner did not err in assessing Steward's residual functional capacity. Although the evidence was in conflict, the Commissioner could find as she did.[5]

The Court finds in conclusion that the Commissioner's findings are supported by substantial evidence on the record as a whole. For the foregoing reasons, the complaint filed by Steward is dismissed with prejudice, and all requested relief is denied. Judgment will be entered for the Commissioner.

IT IS SO ORDERED this __26__ day of __July_____, 2006.


_____
UNITED STATES MAGISTRATE JUDGE

---

[5] Steward alternatively maintains that the Commissioner failed to comply with the requirements of SSR 82-62 because the Commissioner failed to "fully investigate and make explicit findings as to the physical and mental demands of [Steward's] past relevant work and to compare that with what [she] … is capable of doing before [the Commissioner] determine[d] that [Steward] is able to perform her past relevant work." See Document 11 at 14. For the reasons outlined in the Commissioner's brief, see Document 12 at 12-13, the Court finds no merit to Steward's assertion.